Minute Order Form (06/97)

# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 1354 | DATE | 7/11/2001 |
| CASE TITLE | Automed Technologies, Inc. Vs. Charles Eller et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants Eller and Youngs move to dismiss all the claims against them under Fed. R.Civ.P. 12(b)(6). Their motion is granted in part and denied in part. Defendants Eller and Youngs, and third-party witness Express Scripts, Inc. also move for a protective order. This motion is granted. Status hearing set for August 22, 2001 at 9:45am.

(11) ■ [For further detail see order attached to the original minute order.]

No notices required, advised in open court.
No notices required.
Notices mailed by judge's staff.
Notified counsel by telephone.
✓ Docketing to mail notices.
Mail A 450 form.
Copy to judge/magistrate judge.

WAH   courtroom deputy's initials

ED-7 FILED FOR DOCKETING
01 JUL 11 AM 11: 42

Date/time received in central Clerk's Office

number of notices
JUL 1 2 2001 date docketed
docketing deputy initials
date mailed notice
mailing deputy initials

Document Number
33

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AUTOMED TECHNOLOGIES, INC., )
)
        Plaintiff, )
)
vs. ) No. 01 C 1354
)
CHARLES ELLER, HERB YOUNGS, )
and PEGG, INC., d/b/a SUN DESIGN, )
INC., )
)
        Defendants. )

DOCKETED
JUL 1 2 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff AutoMed Technologies, Inc. (AutoMed) has filed an 18-count complaint against defendants Charles Eller, Herb Youngs and Pegg, Inc. d/b/a Sun Design Systems, Inc. (Sun Design). The suit collectively alleges misappropriation of AutoMed's trade secrets, breaches of contracts and breaches of fiduciary duties against each defendant and under various legal theories.[1] Defendants Eller and Youngs move to dismiss all the claims against

---

[1] The specific counts are as follows (named defendants in parentheses):
1. misappropriation under Illinois Trade Secrets Act (Eller and Youngs)
2. misappropriation under Illinois Trade Secrets Act (Sun Design)
3. misappropriation under Illinois Trade Secrets Act (Eller and Youngs)
4. breach of Travenol employment contract - non-competition clause (Eller)
5. breach of Travenol employment contract - non-disclosure clause (Eller)
6. breach of contract (Sun Design)
7. breach of AutoMed employment contract - non-competition clause (Eller)
8. breach of AutoMed employment contract - non-solicitation clause (Eller)
9. breach of AutoMed employment contract - non-competition clause (Youngs)
10. breach of AutoMed employment contract - non-disclosure clause (Youngs)
11. conversion (Eller and Youngs)
12. breach of fiduciary duty - corporate opportunity (Eller)
13. interference with prospective contract (Sun Design)
14. common law misappropriation of trade secrets (Eller and Youngs)
15. breach of fiduciary duty - duty of loyalty (Eller and Youngs)
16. breach of contract - covenant of good faith and fair dealing (Eller and Youngs)
17. breach of fiduciary duty - duty of loyalty (Eller and Youngs)
18. conspiracy (Eller, Youngs and Sun Design)

Counts 2, 6 and 13 are not at issue here because they do not name movants as defendants.

them under Fed. R. Civ. P. 12(b)(6). Their motion is granted in part and denied in part. Defendants Eller and Youngs, and third-party witness Express Scripts, Inc. also move for a protective order to prevent disclosure of their trade secrets until AutoMed more specifically identifies which of its trade secrets were allegedly misappropriated. This motion is granted.

## BACKGROUND

AutoMed designs automated medical dispensing systems. Eller and Youngs were high-level employees who oversaw the research and development of several new and existing products. Eller initially worked with Travenol Laboratories, Inc. (Travenol), pursuant to an employment agreement signed January 3, 1983. This contract included non-disclosure and non-compete provisions that survived termination of his employment. Travenol later became Baxter Healthcare Corporation (Baxter), which then sold its productivity systems business unit, the division in which Eller worked, to AutoMed. The governing asset purchase agreement, dated December 21, 1998, assigned certain of Baxter's intellectual property and trade secret rights to AutoMed. These included the OptiFill and Quickscript automated prescription bottle filler systems. The asset purchase agreement also assigned Baxter's rights under any confidentiality and non-compete agreements with the division's employees and third-party subcontractors.

Eller continued his work in the business unit uninterrupted, signing a new contract on April 9, 1999, officially accepting employment with AutoMed. He did not sign the attached and referenced non-competition and non-disclosure agreement. Youngs also signed an employment agreement with AutoMed, his including non-competition and non-disclosure

provisions, on April 13, 1999.[2] Following the acquisition, AutoMed began developing the Next Generation OptiFill System (Next Generation), an enhanced version of OptiFill. Eller managed the OptiFill business segment, including the original and Next Generation products. Youngs designed much of the software associated with these systems. During Baxter's development of its OptiFill and other systems, it hired Sun Design as a subcontractor. Eller, Youngs and Sun Design, by virtue of their positions, were all privy to certain AutoMed confidential information and trade secrets.

Express Scripts is a mail order pharmaceutical distributor and was an existing OptiFill customer. It collaborated with AutoMed in designing a new system known as the MegaPharmacy Project. Eller organized a team of AutoMed employees, including Youngs, and subcontractors, including Sun Design, to work on the project. In January 2001, Eller and Youngs terminated their employment with AutoMed and accepted positions with Express Scripts. At Express Scripts, Eller and Youngs were assigned to continue their work on the MegaPharmacy Project. They also contracted with Sun Design for design services similar to those it had been providing AutoMed.

## DISCUSSION

When deciding a Federal Rule of Civil Procedure 12(b)(6) motion, we must assume the truth of all well-pleaded factual allegations, making all possible inferences in the plaintiff's favor. <u>Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund</u>, 25 F.3d 417, 420 (7th Cir. 1994). We will dismiss a claim only if it appears "beyond doubt that the plaintiff can prove no set of

---

[2] It is unclear how long Youngs worked for AutoMed's predecessors (*i.e.* Travenol and Baxter). The only contract on the record is the one he signed with AutoMed, but the complaint alleges that he did work for Baxter for some period and his AutoMed contract does refer to information he received from Baxter.

facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Fed. R. Civ. P. 8(a)(2) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Generally, "mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." Strauss v. City of Chicago, 760 F.2d 765, 767 (7th Cir. 1985).

## I. Trade Secrets (Counts 1 and 3)

To state a claim for misappropriation of a trade secret under the Illinois Trade Secrets Act (ITSA), 765 ILCS 1065/1 *et seq.*, the complaint must allege that information was (1) a trade secret, (2) misappropriated and (3) used by defendant. Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1265-66 (7th Cir. 1992). Defendants argue that the complaint does not adequately identify which trade secrets were allegedly misappropriated, and that it does not plead they actually used any AutoMed secrets.

As Judge Shadur observed at his April 23, 2001 hearing, the original complaint was by no means a model of specificity. It alleged generally that AutoMed's software, design plans and research and development, related to OptiFill, Next Generation and the MegaPharmacy Project, were trade secrets. "It is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated. The plaintiff must show concrete secrets." Composite Marine, 962 F.2d at 1265. The amended complaint is not much better, but it does meet minimal Fed. R. Civ. P. 8(a) requirements. "Courts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." Leucadia, Inc. v. Applied Extrusion Technologies,

Inc., 755 F.Supp. 635, 636 (D. Del. 1991). Although it repeats the general allegations, it also specifies Staffing Simulation software and the source code for PPS software as trade secrets (cplt. ¶¶ 42-43). These are much more specific. And although the generic references to the three research projects are problematic for discovery, they do provide defendants with some notice as to the substance of the claims. As we discuss in our analysis of the motion for protective order below, plaintiff will ultimately need to identify which specific designs, software or research defendants allegedly misappropriated. But for withstanding a motion to dismiss, the amended complaint suffices.[3]

The complaint must also allege that defendants used the trade secrets. Without access to Eller's, Youngs' and Express Scripts' records, AutoMed has no way of knowing what information their former employees have disclosed and are using in their current research.[4] Instead, plaintiff relies on the "inevitable disclosure" doctrine. *See* PepsiCo, Inc. v. Redmond, 54 F.3d 1262, 1269 (7th Cir. 1995). Based on defendants' prior positions with plaintiff, the information to which they had access and the nature of their work for their new employer, we can arguably infer use of AutoMed's information. To invoke this doctrine the complaint must do more than make conclusory allegations that the employees will necessarily use trade secrets in their new positions. *See* Complete Business Solutions, Inc. v. Mauro, 2001 WL 290196 at *5 n.7 (N.D. Ill. Mar. 16, 2001). This complaint satisfactorily does so. It specifically alleges

---

[3] The cases rejecting trade secret claims for lack of specificity are predominantly at later stages in the litigation process. *See, e.g.,* Lear Siegler, Inc. v. Glass Plastics Corp., 1987 WL 15749 (N.D. Ill. Aug. 12, 1987) (granting summary judgment to defendant); Composite Marine, 962 F.2d at 1266 (overturning jury verdict). Courts only dismiss a claim for lack of specificity on the pleadings in the most extreme cases. *See, e.g.,* Thermal Zone Products Corp. v. Echo Eng., Ltd., 1993 WL 358148 at *5-6 (N.D. Ill. Sept. 14, 1993) (dismissing complaint that merely recited statutory language).

[4] Many of these records are the subject of the motion for protective order discussed below.

that defendants were assigned to work on the same project that they had been developing for AutoMed. Hiring the former Vice President and General Manager of Systems Engineering (Eller) and the Director of Research and Development and Software Development (Youngs), who headed the MegaPharmacy Project, and then assigning them to the same project, supports an inference that defendants are using information acquired from plaintiff. These facts are sufficient to state a claim.

Lastly, defendants also argue that count 3 is duplicative of count 1, and should therefore be dismissed. We agree. We cannot discern any meaningful difference in the allegations.

## II. Preemption (Counts 11, 12, 14, 15, 17 and 18)

ITSA is the exclusive remedy under Illinois law for misappropriation of trade secrets. 765 ILCS 1065/8(a). The statute explicitly abolishes all common law causes of action, except breach of contract, predicated on a trade secret theory. *See* Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1265 (7th Cir. 1992). Plaintiff argues that it is simply pleading in the alternative, and that these theories for recovery would apply if the information is ultimately found not to be a trade secret. But courts have definitively rejected this reasoning. "The ITSA did not establish a parallel statutory regime to complement the common law; rather, it 'abolished common law theories of misuse of such [secret] information ... . Unless defendants misappropriate[] a statutory trade secret, they d[o] no legal wrong.'" Learning Curve Toys, L.P. v. Playwood Toys, Inc., 1999 WL 529572 at *3 (N.D. Ill. July 20, 1999), *quoting* Composite Marine, 962 F.2d at 1265 (edits in original). On the other hand, ITSA only preempts actions predicated on misuse of secret information. Common law claims

based on different theories are still permissible. <u>Combined Metals of Chicago Ltd. v. Airtek, Inc.</u>, 985 F.Supp. 827, 830 (N.D. Ill. 1997). Defendants contend counts 11, 12, 14, 15, 17 and 18 are barred by the statute. We agree with respect to 11, 14 and 15, partially as to 17 and 18, but not as to 12.

Count 11 is a conversion claim, alleging that defendants assumed unauthorized control over plaintiff's property. The property in question, however, is software and design plans. These are among the trade secrets that were allegedly misappropriated. Although these items exist in tangible form, their value is primarily from the information contained within that form. *See* <u>Thomas & Betts Corp. v. Panduit Corp.</u>, 108 F.Supp.2d 968, 973 (N.D. Ill. 2000). This claim is really just another way of charging that defendants took AutoMed's secret information, for which ITSA is the exclusive remedy.

Count 14, by its terms, is a common law trade secret misappropriation claim. It is predicated on defendants' use of confidential information. Consequently, it is barred.

Count 15 alleges both Eller and Youngs breached their duty of loyalty. But it does not specify how defendants acted adversely to their employer. Rule 8(a) requires the complaint provide notice of the basis for relief. This count provides none. Because it is conceivable that plaintiff could still state a claim for disloyalty without implicating trade secrets, however, we dismiss count 15 without prejudice.

The remaining three claims are at least partially salvageable. Count 12 alleges that Eller violated his fiduciary duties as a corporate officer by usurping a corporate opportunity for his own benefit. This states an independent claim, completely distinct from any trade secrets.

Count 17 makes allegations of disloyalty similar to count 15, which we dismissed above. But this count does articulate bases for relief, one of which is permissible. It asserts that Eller used AutoMed's confidential information to compete against his former employer, and that he solicited other AutoMed employees to join him. Breaching a duty of loyalty by using confidential information is still misappropriation of a trade secret. That portion of the claim is stricken. Soliciting employees, however, is independent of any trade secrets involved, and so is not preempted by ITSA.

Count 18 asserts a conspiracy between Eller, Youngs and Sun Design to steal AutoMed's confidential information and to sabotage AutoMed's contract with Express Scripts. The former charge is preempted. But the interference with contractual relations is not predicated on trade secrets, at least in this case. A conspiracy to do so is actionable, so this portion of the claim survives.

### III. Breach of Contract (Counts 4, 5, 7-10 and 16)

Counts 4, 5, 7, 8, 9, 10 and 16 all allege breaches of contracts. Defendants raise several arguments why they must be dismissed: (a) Express Scripts is not a competitor; (b) the restrictive covenants violate Illinois public policy; (c) Eller's Travenol contract was not assignable; (d) Eller did not sign AutoMed's non-competition and non-disclosure agreement; and (e) the implied covenant of good faith and fair dealing does not give rise to an independent claim. The first two affect the contract claims generally, and the latter three attack specific claims. We discuss each argument in turn.

#### A. Express Scripts as a Competitor (Counts 4, 5 and 7-10)

Defendants contend that Express Scripts was AutoMed's customer, not its competitor,

and that working for a customer does not violate their non-competition clauses. Competitor and customer are not mutually exclusive designations. A customer can become a competitor, and vice versa. Any reasonable businessperson would certainly consider a customer's ability to substitute in-house services for its own as a competitive threat. Express Scripts was, and indeed may still be, AutoMed's customer. Moreover, in the past, AutoMed may not have considered Express Scripts a competitor. But that changed when Express Scripts decided to develop the MegaPharmacy Project. Express Scripts, with defendants' assistance, is now building a product that substitutes for plaintiff's. At the very least, determining whether Express Scripts is a competitor requires a more complete record than we have at this stage of the litigation.

### B. Enforceability of Restrictive Covenants (Counts 4, 5, and 7-10)

Although Illinois views some restrictive covenants suspiciously as restraints on trade, it will enforce them to protect trade secrets. Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc., 685 N.E.2d 434, 443 (Ill. App. 2d Dist. 1997). The clauses must be limited, both in duration and geographic range. *Id.* But these arguments go to the merits. They require the court to assess the restrictions' reasonableness, including the legitimacy of the employer's interests, what is necessary to protect them, and the employees' ability to still earn a living in their field. This is an inherently fact-based determination that is not appropriate at the motion to dismiss stage.

### C. Assignability of Restrictive Covenants (Counts 4 and 5)

Defendants maintain that AutoMed cannot enforce the Travenol contracts' restrictive covenants because such clauses are not assignable. The employment agreement itself is silent

on this point, neither explicitly authorizing nor prohibiting Travenol from assigning the contracts.[5] As a general rule, parties may freely assign rights and duties under a contract. Patrick Media Group, Inc. v. DuPage Water Comm'n, 630 N.E.2d 958, 965 (Ill. App. 1st Dist. 1994); *see also* First Illinois Nat'l Bank v. Knapp, 615 N.E.2d 75, 78 (Ill. App. 2d Dist. 1993) ("We know of no case which holds that a contract must specifically provide for the assignability of an otherwise assignable contract right."). Defendants counter that executory contracts, with elements of personality, may not be assigned without consent of both parties. *See* Ginsburg v. Bull Dog Auto Fire Ins. Ass'n, 160 N.E. 145, 146 (Ill. 1928). The reasoning, applied most frequently in employment contexts, is that "You have the right to the benefit you anticipate from the character, credit and substance of the party with whom you contract." Mueller v. Northwestern Univ., 63 N.E. 110, 115 (Ill. 1902).

There is little caselaw applying this principle specifically to restrictive covenants, and they do not fit neatly within Ginsburg's rationale for two reasons. First, the covenants typically take effect upon termination of employment, at which point the employer has no further obligations to the employee. Because the employer has completed its promised performance, the contract is no longer executory. Second, for this very same reason, the contract loses its element of personality. An employee has a clear interest in controlling for whom he works. But the identity of the party enforcing a restrictive covenant should make little difference to a former employee. A third, and somewhat related point, is that courts, for public policy reasons, already scrutinize restrictive covenants closely. Because courts only

---

[5] If the contract expressly permits a party to assign its rights under the contract, the assignee may enforce them, including any restrictive covenants. *See, e.g.,* Hamer Holding Group v. Elmore, 560 N.E.2d 907, 913 (Ill. App. 1st Dist. 1990).

enforce covenants to the extent they are reasonable and necessary to protect an employer's legitimate interests, an employee will not be prejudiced by having the contract assigned to a successor business.

From the few cases on point, where the employment contract is silent, courts generally permit assignment or restrictive covenants to a corporate acquirer. *See* Hexacomb Corp. v. GTW Enterprises, 875 F.Supp. 457, 464 (N.D. Ill. 1993) (citing Hamer and enforcing three confidentiality agreements, only two of which had express assignment clauses); *see also* Artromick Int'l, Inc. v. Koch, 2001 WL 23652 at *2-3 (Ohio App. 10th Dist. Jan. 11, 2001). This seems the better-reasoned default rule (which the employee could contract around). Any vestiges of personality are further mitigated when the business is acquired in its entirety, as a going concern. For all practical purposes the employees still work for the same business and their duties vary little, if at all, following the assignment. *See* Hexacomb, 875 F.Supp. at 464. Moreover, the confidential information and good will protected by such agreements are typically critical components of an asset purchase. A rule prohibiting assignment would frustrate many acquisitions. Without any Illinois precedent holding that restrictive covenants may never be assigned without consent, we are unwilling to anticipate new public policy restrictions on contract rights.

### D. The Unsigned Agreement (Counts 7 and 8)

Eller next argues he is not bound by the AutoMed confidentiality agreement because he did not sign it. Plaintiff sent Eller a letter contract formally offering him employment following the acquisition (cplt. exh. D). It expressly stated: "Finally, your choice of employment with AutoMed will require you to complete a revised Non-Competitive and Non-Disclosure Agreement. A copy of this Agreement is attached as Exhibit A." Eller signed the

letter, but not the attachment, on April 9, 1999, and continued working for AutoMed until leaving for Express Scripts in January 2001. The letter's language arguably incorporates the non-competition agreement, making it enforceable regardless of whether Eller actually signed both pieces of paper. *See* Mid-Town Petroleum, Inc. v. Dine, 390 N.E.2d 428, 434-35 (Ill. App. 1st Dist. 1979), *quoting* Williston on Contracts, vol. 4, § 583 at 142 (3d ed. 1961) ("It is essential to examine specifically the papers not signed by the parties to be charged, which it is sought to incorporate with the paper or papers that are so signed, and determine whether the unsigned papers have been adopted by the signed papers."); Corbin on Contracts, vol. 2, § 512 at 744-45 (1950) ("All that is required is that these writings shall so clearly evidence the fact that a contract was made, and what are its terms, that there is no serious possibility that the assertion of the contract is false."). Moreover, conduct demonstrating assent can make an unsigned contract enforceable, even where the Statute of Frauds requires a writing. *See* M.J. Oldenstedt Plumbing Co. v. K Mart Corp., 629 N.E.2d 214, 219 (Ill. App. 3d Dist. 1994). Eller was already subject to the non-competition and non-disclosure provisions from his 1983 employment agreement with Travenol. Although some terms differed, this agreement, for all practical purposes, was simply a reaffirmation. The letter explicitly conditions continued employment on acceptance of the appended agreement. Eller did work for AutoMed for nearly two additional years. The course of dealing makes a plausible case that Eller understood and, by his conduct, agreed to those terms. This is adequate to survive a motion to dismiss.

### E. Good Faith and Fair Dealing (Count 16)

Count 16 alleges that defendants breached the covenant of good faith and fair dealing implicit in their employment contracts. Although Illinois law implies this in every contract,

it does not create independent duties or give rise to an independent cause of action. *See* Echo, Inc. v. Whitson Co., 121 F.3d 1099, 1106 (7th Cir. 1997). It is used more as a canon of construction for interpreting a contract's other terms. *See id.* If, as plaintiff maintains, the true basis for its claims are breaches of other contractual provisions, the implied covenant may play some role in evaluating those claims. But count 16 cannot stand as an independent claim.

IV. Fiduciary Duty (Count 12 and 17)

Defendants move to dismiss the remaining fiduciary duty claims because those duties ceased when the employment relationship terminated. But the complaint includes allegations of wrongdoing while defendants still worked for AutoMed. Plaintiff asserts that Eller and Youngs began negotiating and preparing for their departure well in advance of doing so. They assumed control over a particular project, segregated their work and began recruiting fellow transferors, all on behalf of Express Scripts, and all while still working for AutoMed. This adequately alleges disloyal action while the duty still applied.

V. Protective Order

Defendants initially moved for a protective order before Judge Shadur. He declined to rule based in part of plaintiff's representations that its amended complaint would more specifically identify the trade secrets in question. As we noted above, the amended complaint does identify Staffing Simulation software and the source code for PPS software. Although these are the only trade secrets particularized, these are obviously not the entirety of plaintiff's case. The general allegations of software, designs and research remain, as do generic references to the three research projects: OptiFill, Next Generation and MegaPharmacy. As Judge Shadur and we have both indicated, these are insufficient.

Determining whether a trade secret has been misappropriated usually involves

examining things that the other party considers its own trade secrets. There is no privilege excepting trade secrets from discovery, but "courts must exercise discretion to avoid unnecessary disclosure of such information." Triangle Ink and Color Co. v. Sherwin-Williams Co., 61 F.R.D. 634, 636 (N.D. Ill. 1974).[6] Consequently, "plaintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets." Englehard Corp. v. Savin Corp., 505 A.2d 30, 33 (Del. Ch. 1986). It is not enough to claim that defendants will be able to learn the details through discovery. Plaintiff must provide them now so we can evaluate the relevance of plaintiff's discovery and address any objections. *See* Leucadia, 755 F.Supp. at 37. Moreover, Express Scripts is not a party. It cannot demand disclosures from plaintiff through discovery.

AutoMed maintains that it is only seeking to discover its own confidential information, not Express Scripts' secrets. This argument is a red herring, particularly given the breadth of plaintiff's discovery requests. Express Scripts has its own trade secrets, and requests for all documents in any way related to defendants or the three projects will undoubtedly go beyond AutoMed's secrets. For example, Express Scripts claims that it initiated the MegaPharmacy Project before ever contracting with AutoMed. Any materials predating AutoMed's involvement with the project cannot be plaintiff's trade secrets. Because these two companies were collaborating, there will undoubtedly be some overlap. There will just as certainly be information that belongs to each one, but not the other. Express Scripts has as much right to protect its proprietary information as does AutoMed. We will not permit

---

[6] These concerns are one of the reasons we do not compel such particularity in the complaint. Instead, courts typically permit the plaintiff to submit a separate trade secret statement, usually under seal. *See, e.g.,* Engelhard, 505 A.2d at 32.

plaintiff to go on a fishing expedition through Express Scripts' files. Plaintiff must articulate what specific information they believe defendants have misappropriated, so we can assess whether its requests are reasonably tailored to discover relevant evidence.

Movants do not seek to suspend discovery in its entirety, only that portion which implicates their trade secrets. Discovery should proceed unhindered on the other counts. But plaintiff must particularize which of its secrets were allegedly misappropriated before we will compel Express Scripts to reveal its own.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted in part and denied in part. Counts 3, 11, 14 and 16 are dismissed. Count 15 is dismissed without prejudice. Plaintiff may proceed with counts 17 and 18 on its solicitation and interference with contract theories, respectively, but not based on misuse of confidential information for either. Counts 1, 4, 5, 7-10 and 12 also stand.[7] Defendants' and Express Scripts' motion for protective order is granted. Plaintiff is ordered to file a particularized trade secret statement, under seal.

_JAMES B. MORAN_
Senior Judge, U. S. District Court

July 11, 2001.

---

[7] As noted above, counts 2, 6 and 13 were not subject to this motion, and we express no opinion with respect to them.